**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION**

**Judge Kathleen M. Williams
Magistrate Judge Edwin G. Torres**

**CASE NO. 1:18-cv-20333**

**SYMBOLOGY INNOVATIONS, LLC,**

      **Plaintiff,**

**v.**

**TECH DATA CORP.,**

      **Defendant.**

**PATENT CASE**

**JURY TRIAL DEMANDED**

**TECH DATA CORP.'S RULE 12(b)(6) MOTION TO
<u>DISMISS FOR FAILURE TO STATE A CLAIM</u>**

## <u>TABLE OF CONTENTS</u>

**Page(s)**

I.    SUMMARY OF THE ARGUMENT ........................................................................... 1

II.   STATEMENT OF THE ISSUE .................................................................................. 1

III.  STAGE AND NATURE OF PROCEEDINGS .......................................................... 2

IV.   THE PATENTS-IN-SUIT ........................................................................................... 2

      A.   Legal Standard ................................................................................................6

           1.   This Case Should Be Disposed of at the Pleading Stage Through Rule 12(b)(6). ..................................................................6

           2.   The Law of 35 U.S.C. § 101. ...........................................................6

      B.   The Patents-in-Suit are Invalid under 35 U.S.C. § 101 .................................8

           1.   *Alice* Step 1 .....................................................................................8

           2.   *Alice* Step 2 ...................................................................................15

      C.   The Disproportionate Risk of Preemption Confirms that the Claims Are Abstract .................................................................................................18

V.    CONCLUSION ........................................................................................................ 18

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l,*
134 S. Ct. 2347 (2014) ...................................................................................... *passim*

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) .................................................................................................6

*Bancorp Servs. L.L.C. v. Sun Life Assur. Co.,*
687 F.3d 1266 (Fed. Cir. 2012) .................................................................6, 14, 17

*Bilski v. Kappos,*
561 U.S. 593 (2010)..........................................................................................6, 7, 8

*buySAFE, Inc. v. Google, Inc.,*
765 F.3d 1350 (Fed. Cir. 2014) ............................................................................17

*Clear with Computers, LLC v. Dick's Sporting Goods, Inc.,*
21 F. Supp. 3d 758 (E.D. Tex. 2014) ...................................................................15

*Content Extraction and Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n,*
776 F.3d 1343 (Fed. Cir. 2014) ........................................................................ *passim*

*Cuvillier v. Sullivan,*
503 F.3d 397 (5th Cir. 2007) ..................................................................................6

*Cyberfone Sys., LLC v. CNN Interactive Grp., Inc.,*
558 F. App'x 988 (Fed. Cir. 2014) .......................................................................12

*CyberSource Corp. v. Retail Decisions, Inc.,*
654 F.3d 1366 (Fed. Cir. 2011) ..............................................................................7

*DDR Holdings, LLC v. Hotels.com, L.P.,*
773 F.3d 1245 (Fed. Cir. 2014) ............................................................................16

*Diamond v. Chakrabarty,*
447 U.S. 303 (1980)..................................................................................................7

*Diamond v. Diehr,*
450 U.S. 175 (1981)..................................................................................................7

*Enfish, LLC v. Microsoft Corp.,*
  822 F.3d 1327 (Fed. Cir. 2016) .......................................................................................16

*Fort Props., Inc. v. Am. Master Lease LLC,*
  671 F.3d 1317 (Fed. Cir. 2012) .........................................................................................7

*Intellectual Ventures I LL v. Capital One Bank U.S.A.,*
  792 F.3d 1363 (Fed. Cir. 2015) .......................................................................................17

*Internet Patents Corp. v. Active Network, Inc.,*
  790 F.3d 1343 (Fed. Cir. 2015) .........................................................................10, 13 ,14

*Lovelace v. Software Spectrum,*
  78 F.3d 1015 (5th Cir. 1996) .............................................................................................6

*Loyalty Conversion Sys. Corp. v. Am. Airlines, Inc.,*
  66 F. Supp. 3d 829 (E.D. Tex. 2014) ..............................................................................18

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.,*
  132 S. Ct. 1289 (2012) .......................................................................................................7

*Morales v. Square, Inc.,*
  75 F. Supp. 3d. 716 (W.D. Tex. 2014), *aff'd*, 621 F. App'x 660 (Fed. Cir.
  2015), *cert. denied*, 136 S. Ct. 1461 (2016) ....................................................................9

*Parker v. Flook,*
  437 U.S. 584 (1978) ...........................................................................................................7

*Phoenix Licensing, L.L.C. v. Consumer Cellular, Inc.,*
  No. 2:16-cv-152-JRG-RSP, 2017 WL 1065938 (E.D. Tex. Mar. 8, 2017) ......................8

*Recognicorp, LLC v. Nintendo Co., Ltd.,*
  855 F.3d 1322 (Fed. Cir. 2017) .....................................................................10, 11, 12, 17

*Secured Mail Solutions LLC v. Universal Wilde, Inc.,*
  873 F.3d 905 (Fed. Cir. 2017) ............................................................................... *passim*

*In re TLI Commc'ns LLC Patent Litigation,*
  823 F.3d 607 (Fed. Cir. 2016) .........................................................................................17

*Ultramercial, Inc. v. Hulu, LLC,*
  772 F.3d 709 (Fed. Cir. 2014) ...........................................................................6, 9, 12, 15

## I.      SUMMARY OF THE ARGUMENT

Tech Data moves to dismiss Symbology's Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil procedure for failure to state a claim upon which relief can be granted. The claims of Symbology's patents are directed to the abstract idea of data recognition and retrieval. But data recognition and retrieval, like recognizing and retrieving information associated with a pattern, like a barcode, is not a technological improvement, an inventive way of applying conventional technology, or even new.

Moreover, none of the claims recite any specific hardware or software. Instead, the specification discloses only that the alleged invention uses off-the-shelf computer components and devices like a "portable electronic device," "visual detection applications," and a "remote server" to perform conventional activities like "capturing," "detecting," "decoding," "sending," "receiving," and "displaying" information. Symbology's patents do no more than withdraw a basic idea (data recognition and retrieval) from the public domain without disclosing any particularized application of that idea. Therefore, Symbology's patents are invalid under 35 U.S.C. § 101 for failure to claim patent-eligible subject matter.

Resolving these issues does not require discovery or formal claim construction. To avoid waste of judicial and party resources unnecessarily litigating invalid patents, Tech Data thus requests that the Court dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted.

## II.      STATEMENT OF THE ISSUE

Abstract ideas are ineligible for patentability under 35 U.S.C. § 101, absent an inventive concept that amounts to significantly more than the abstract idea. The Patents-in-Suit are directed to the abstract idea of data recognition and retrieval. The Patents-in-Suit do not include an inventive concept beyond that idea. Should the Court therefore dismiss Symbology's Complaint pursuant to Rule 12(b)(6) for failure to state a claim?

## III.    STAGE AND NATURE OF PROCEEDINGS

On December 22, 2017, Symbology filed this lawsuit accusing Tech Data of infringing: U.S. Patent Nos. 7,992,773 (the "'773 Patent"); 8,424,752 (the "'752 Patent"); 8,651,369 (the "'369 Patent"); and 8,936,190 (the "'190 Patent") (collectively, the "Patents-in-Suit"). Symbology accuses Tech Data of infringing "one or more claims" of the Patents-in-Suit[1] by Tech Data's alleged "using and/or incorporating" a Quick Response Code ("QR code") that appears on some advertising media:



(Compl. ¶¶ 37, 56, 75, 94.)

## IV.    THE PATENTS-IN-SUIT

The Patents-in-Suit are entitled "System and Method for Presenting Information about an Object on a Portable Electronic Device" and share the same Abstract and the same specification. According to the Abstract, the Patents-in-Suit are directed to "enabling a portable electronic device to retrieve information about an object when the object's symbology, e.g., a barcode, is detected." ('773 Patent at Abstract; '752 Patent at

---

[1] In its Complaint, Symbology asserts that Tech Data: "has infringed and continues to infringe one or more claims of the '773 Patent, including (at least) Claims 1, 2, 3, 4, 6, 7, 8, 10, 11, 14, 15, 17, and 18" (Dkt. No. 1 ("Compl.") ¶ 32); "has infringed and continues to infringe one or more claims of the '752 Patent, including (at least) Claims 1, 2, 3, 4, 5, 7, 8, 9, 11, 12, 15, 17, 18, 23, 24, and 25" (*id.* ¶ 51); "has infringed and continues to infringe one or more claims of the '369 Patent, including (at least) Claims 1, 2, 3, 4, 5, 7, 8, 9, 11, 12, 15, 17, 18, 23, 24, and 25" (*id.* ¶ 70); and "has infringed and continues to infringe one or more claims of the '190 Patent, including (at least) Claims 1, 2, 3, 4, 5, 7, 8, 9, 11, 12, 15, 17, 18, and 20" (*id.* ¶ 89).

Abstract; '369 Patent at Abstract; and '190 Patent at Abstract.)

Claim 1 of the '752 Patent, set forth below, is representative of the claims in the Patents-in-Suit:

1. A method comprising:

capturing a digital image using a digital image capturing device that is part of a portable electronic device;

detecting symbology associated with an object within the digital image using a portable electronic device;

decoding the symbology to obtain a decode string using one or more visual detection applications residing on the portable electronic device;

sending the decode string to a remote server for processing;

receiving information about the object from the remote server wherein the information is based on the decode string of the object.;

displaying the information on a display device associated with the portable electronic device.

('752 Patent at cl. 1.)

This claim can be broken down into six main steps: (1) <u>capturing</u> an image with a camera or a scanner on a "portable electronic device" (e.g., taking a photograph or scanning an image with a smartphone); (2) <u>detecting</u> a symbology (e.g., recognizing a barcode in the captured image); (3) <u>decoding</u> the symbology to obtain a "decode string" (e.g., reading information from the barcode); (4) <u>sending</u> the "decode string" to a "server" for processing (e.g., requesting a webpage based on the information obtained from the barcode); (5) <u>receiving</u> information from the "server" in response (e.g., receiving the contents of the webpage ); and (6) <u>displaying</u> the information received on the portable electronic device (e.g., displaying a webpage). Put simply, these steps are directed to recognizing and retrieving information associated with a pattern.

The applicant made clear through his own language in the specification that the components and processes for carrying out the claimed method were conventional. For

example, the claimed "portable electronic device" can be virtually any mobile device capable of taking a photograph or scanning an image. (*Id*. at 1:58-61 ("Examples of the portable electronic devices that contain both applications and imaging systems include Apple Computer's IPhone, Google's Droid, and various mobile devices from Motorola"); *id*. at 2:57-61 ("Using any applicable visual detection device (e.g., a camera, scanner, or other device) on the portable electronic device, the user may select an object by scanning or capturing an image of symbology (e.g., barcodes) associated with the object.").) The applicant further acknowledged that various programs and applications operable on a portable electronic device to scan and decode a barcode were available in the prior art. (*Id*. at 3:29-33 ("Examples of applications that allow scanning include Neomedia's Neo Reader, Microsoft's Smart Tags, Android's Shop Savvy, Red Laser, ScanBuy, etc.").) According to the Patents-in-Suit, once a barcode is decoded (using any of these existing applications), the "decode string" (i.e., the information obtained from the barcode) is then "sent" to a "remote server" to retrieve information (e.g., webpage content) that is then displayed on the portable electronic device. (*Id*. at 3:21–28.)

All the modules of the claimed "remote server" are generic computer modules and, as the specification states, each "may be implemented in various forms of hardware, software, firmware, special purpose processors, or a combination thereof." (*Id*. at 9:65–10:1.) The specification provides examples of a "remote server," but each is a generic Internet website that users visit on a regular basis: "Warner Brothers server connected to a Warner Brothers website" or "an e-commerce site such as Amazon.com." (*Id*. at 5:33–42).

The "communication system" used to implement the claimed method is also composed of generic networking elements. Figure 1 in the '752 Patent depicts these conventional networking elements:



**FIG. 1**

(*Id.* at Fig. 1). The specification explains that this system is comprised of generic components, including "a server 12, a storage medium 14, a portable electronic device 16, one or more satellites 18, one or more satellite dishes 20, one or more mobile terminal communications towers 22, one or more Wi-Fi towers 24." (*Id.* at 3:63-67.) No specialized components or programming are disclosed or required. For example, the portable electronic device and the server are connected to the communication network "by any suitable means." (*Id.* at 4:7-28.)

The applicant acknowledged that various prior-art scanning and decoding programs were available to carry out the functions of scanning a barcode to retrieve information from a website, but noted: "it may be difficult to select the appropriate application for executing the scanning functions" because "a user may have dozens of applications loaded on his or her portable electronic device." (*Id.* at 3:38-39.) The applicant thus wanted to provide a more convenient way to "select[] . . . the best applications for scanning a particular symbology." (*Id.* at 3:36-50.) In other words, the applicant wanted to simply automate something that was otherwise performed manually.

A.      **Legal Standard**

1.      **This Case Should Be Disposed of at the Pleading Stage Through Rule 12(b)(6).**

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a complaint that fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion, a complaint "must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true raise a right to relief above the speculative level." *Cuvillier v. Sullivan*, 503 F.3d 397, 401 (5th Cir. 2007) (internal citations and quotations omitted). In deciding a Rule 12(b)(6) motion, courts consider documents attached to or incorporated into the complaint as well as facts alleged in the complaint. *Lovelace v. Software Spectrum*, 78 F.3d 1015, 1017 (5th Cir. 1996). Although factual allegations are taken as true, legal conclusions are given no deference—those matters are left for the court to decide. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (noting tenet that allegations are taken as true on a motion to dismiss "is inapplicable to legal conclusions"). "[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief [as a matter of law], this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." *Cuvillier*, 503 F.3d at 401 (internal citations and quotations omitted).

Patentability under 35 U.S.C. § 101 is a threshold legal issue. *Bilski v. Kappos*, 561 U.S. 593, 602 (2010). Accordingly, the § 101 inquiry is properly raised at the pleadings stage if it is apparent from the face of the patent that the asserted claims are not directed to eligible subject matter. *See Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 718–19 (Fed. Cir. 2014) (Mayer, J., concurring). In those situations, claim construction is not required to conduct a § 101 analysis. *Bancorp Servs. L.L.C. v. Sun Life Assur. Co.*, 687 F.3d 1266, 1273 (Fed. Cir. 2012) ("[W]e perceive no flaw in the notion that claim construction is not an inviolable prerequisite to a validity determination under § 101.").

2.      **The Law of 35 U.S.C. § 101.**

Section 101 of the Patent Act sets forth four categories of patentable subject matter: "any new and useful process, machine, manufacture, or composition of matter." 35 U.S.C.

§ 101. Also, the law recognizes three exceptions to patent eligibility: "laws of nature, physical phenomena, and ***abstract ideas***." *Diamond v. Chakrabarty*, 447 U.S. 303, 309 (1980) (emphasis added). Abstract ideas are ineligible for patent protection because a monopoly over these ideas would preempt their use in all fields. *See Bilski*, 561 U.S. at 611–12. In other words, "abstract intellectual concepts are not patentable, as they are the basic tools of scientific and technological work." *Id.* at 653 (quoting *Gottschalk v. Benson*, 409 U.S. 63, 67 (1972)).

Determining whether a patent claim is impermissibly directed to an abstract idea involves two steps. First, the court determines "whether the claims at issue are directed to a patent-ineligible concept." *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2355 (2014). Second, if the claim contains an abstract idea, the court evaluates whether there is "an 'inventive concept'—*i.e.*, an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *Id.* (internal quotations and citations omitted).

Transformation into a patent-eligible application requires "more than simply stating the abstract idea while adding the words 'apply it.'" *Id.* at 2357 (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1294 (2012)). Indeed, if a claim could be performed in the human mind, or by a human using pen and paper, it is not patent-eligible. *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1372 (Fed. Cir. 2011). Also, a claim is not meaningfully limited if it includes only token or insignificant pre- or post-solution activity—such as identifying a relevant audience, category of use, field of use, or technological environment. *Mayo*, 132 S. Ct. at 1297–98, 1300–01; *Bilski*, 561 U.S. at 610; *Diamond v. Diehr*, 450 U.S. 175, 191–92 & n.14 (1981); *Parker v. Flook*, 437 U.S. 584, 595 n.18 (1978). Finally, "simply appending conventional steps, specified at a high level of generality, to laws of nature, natural phenomena, and abstract ideas cannot make those laws, phenomena, and ideas patentable." *Mayo*, 132 S. Ct. at 1300; *see also Fort Props., Inc. v. Am. Master Lease LLC*, 671 F.3d 1317, 1323 (Fed. Cir. 2012) ("Such a broad and general limitation does not impose meaningful limits on the claim's scope.").

**B.** **The Patents-in-Suit are Invalid under 35 U.S.C. § 101**

Symbology's Complaint should be dismissed. The claims of the Patents-in-Suit are invalid under 35 U.S.C. § 101 because they fail both prongs of the *Alice* test. Each of the claims is directed to the abstract idea of data recognition and retrieval. Abstract ideas are not eligible for patenting. None of the claims contains an "'inventive concept' . . . sufficient to ensure that the patent in practice amounts to ***significantly more*** than a patent upon the ineligible concept itself." *See Alice*, 134 S. Ct. at 2355 (emphasis added). Because Symbology has failed to state a claim upon which relief may be granted, Tech Data respectfully requests that the Court grant its motion and dismiss this case with prejudice. Fed. R. Civ. P. 12(b)(6).

**1.** *Alice* **Step 1**

In determining patent eligibility under § 101, the Court must first determine whether the claims are directed to an abstract idea. *Alice*, 134 S. Ct. at 2355. Under any plausible reading, the claims of the Patents-in-Suit are directed to an unpatentable, abstract idea because they claim nothing more than the "longstanding," "routine," and "conventional" concept of data recognition and retrieval. *See Alice*, 134 S. Ct. at 2356-59; *Bilski*, 561 U.S. at 611.

**(a)** **Claim 1 of the '752 Patent is directed to the abstract idea of data recognition and retrieval.**

Claim 1 of the '752 Patent is representative of the claims.[2] *See, e.g., Phoenix Licensing, L.L.C. v. Consumer Cellular, Inc.*, No. 2:16-cv-152-JRG-RSP, 2017 WL 1065938, at *8–9 (E.D. Tex. Mar. 8, 2017) (invalidating 974 claims after analyzing only a few "representative claims" where the other claims were "substantially similar" and "linked to the same abstract idea."). In assessing whether this claim is directed to an abstract idea, the Court must look past the claim language for the purpose of the claim to determine

---

[2] Where claims are "substantially similar and linked to the same abstract idea," courts may look to representative claims in a § 101 analysis. *Content Extraction and Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1348 (Fed. Cir. 2014).

what the invention is trying to achieve. *Morales v. Square, Inc.*, 75 F. Supp. 3d. 716, 725 (W.D. Tex. 2014), *aff'd*, 621 F. App'x 660 (Fed. Cir. 2015), *cert. denied*, 136 S. Ct. 1461 (2016). All Claim 1 of the '752 Patent explains is a way to use a barcode to obtain information in order to access a webpage, consisting of nothing more than a set of basic ideas like capturing, detecting, decoding, sending, receiving, and displaying data:

| Claim Language | Claimed Idea |
|---|---|
| A method comprising: | |
| capturing a digital image using a digital image capturing device that is part of a portable electronic device; | capturing data |
| detecting symbology associated with an object within the digital image using a portable electronic device; | detecting data |
| decoding the symbology to obtain a decode string using one or more visual detection applications residing on the portable electronic device; | decoding data |
| sending the decode string to a remote server for processing; | sending data |
| receiving information about the object from the remote server wherein the information is based on the decode string of the object.; | receiving data |
| displaying the information on a display device associated with the portable electronic device. | displaying data |

At a high level, this claim describes the most generic functional steps of a standard computer (i.e., capturing, detecting, decoding, sending, receiving, and displaying data). Such a broad concept is not patent eligible because it "recite[s] an abstraction—an idea, having no particular concrete or tangible form." *Ultramercial*, 772 F.3d at 715. That the claim purports to implement the steps with conventional components like a "portable electronic device," a "remote server," a "display device," and generic "visual detection applications" does not make it any less abstract.

The specification (shared by the Patents-in-Suit) admits that barcode scanning and decoding programs were prevalent at the time of the invention. ('752 Patent at 3:29-36.) Indeed, the claims implement this prior-art technology to carry out the steps of capturing, detecting, decoding, and retrieving information from a server. And while the applicant longed to provide a more convenient way to select an "appropriate" scanning/decoding application from the "dozens of applications" that may reside on a user's portable

electronic device, he failed to disclose any details of how that was to be accomplished in Claim 1 of the '752 Patent.  *See Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1348 (Fed. Cir. 2015) (concluding that claim not directed to patent-eligible subject matter where "[t]he mechanism for maintaining the state is not described, although this is stated to be the essential innovation."). Claim 1 of the '752 Patent does no more than recognize an image, decode the image, then do something based upon the decoded information with existing technology. It is thus directed to the abstract idea of data recognition and retrieval.

Courts have found similar patent claims to be ineligible. In *Content Extraction*, the claims generally recited "a method of 1) extracting data from hard copy documents using an automated digitizing unit such as a scanner, 2) recognizing specific information from the extracted data, and 3) storing that information in a memory." *Content Extraction*, 776 F.3d at 1345. The claimed method "could be performed by software on an automated teller machine (ATM) that recognizes information written on a scanned check, such as the check's amount, and populates certain data fields with that information in a computer's memory." *Id.* The Federal Circuit concluded in *Alice*'s first step that the claims were "drawn to the abstract idea of 1) collecting data, 2) recognizing certain data within the collected data set, and 3) storing that recognized data in a memory"; or, put simply: "data recognition and storage." *Id.* at 1347. In rejecting the plaintiff's argument that the claims were not abstract because they required the use of a scanner, the Federal Circuit likened the claims to those found abstract in *Alice*, which "also required a computer that processed streams of bits." *Id.* Like the *Content Extraction* claims, Claim 1 of the '752 Patent is abstract because it simply decodes an image to obtain information and then retrieves data from a server based on that information. The claims in *Content Extraction* were directed to data recognition and *storage*, whereas the Patents-in-Suit are directed to data recognition and *retrieval*—the former claims stored the recognized data, while the latter claims retrieve additional data based on the recognized data.

In *Recognicorp, LLC v. Nintendo Co., Ltd.*, 855 F.3d 1322 (Fed. Cir. 2017), the Federal Circuit found the patent claim at issue to be directed toward the abstract idea of

"encoding and decoding image data." *Recognicorp*, 855 F.3d at 1324. The claim at issue in *Recognicorp* recited:

> A method for creating a composite image, comprising:
>
> displaying facial feature images on a first area of a first display via a first device associated with the first display, wherein the facial feature images are associated with facial feature element codes;
>
> selecting a facial feature image from the first area of the first display via a user interface associated with the first device,
>
> wherein the first device incorporates the selected facial feature image into a composite image on a second area of the first display, wherein the composite image is associated with a composite facial image code having at least a facial feature element code and wherein the composite facial image code is derived by performing at least one multiplication operation on a facial code using one or more code factors as input parameters to the multiplication operation; and
>
> reproducing the composite image on a second display based on the composite facial image code.

*Id.* The Federal Circuit described the claim as a "method whereby a user displays images on a first display, assigns image codes to the images through an interface using a mathematical formula, and then reproduces the image based on the codes." *Id.* at 1326. The Federal Circuit found that this method reflected "standard encoding and decoding." *Id.*

The Federal Circuit then explained that encoding and decoding data is "an abstract concept long utilized to transmit information." *Id.* (citing *Intellectual Ventures I LLC v. Capital One Fin. Corp.*, 850 F.3d 1332, 1340–41 (Fed. Cir. 2017) (organizing, displaying, and manipulating data encoded for human- and machine-readability is directed to an abstract concept)). The Federal Circuit provided several examples of long-utilized methods of encoding and decoding of data to transmit information: "Morse code, ordering food at a fast food restaurant via a numbering system, and Paul Revere's 'one if by land, two if by sea' signaling system all exemplify encoding at one end and decoding at the other end."

*Id.* Claim 1 of the '752 Patent likewise simply decodes an image to obtain information, an abstract concept.

Most recently, in *Secured Mail Solutions LLC v. Universal Wilde, Inc.*, 873 F.3d 905 (Fed. Cir. 2017), the Federal Circuit found claims directed to encoding and decoding a QR code invalid under both *Alice* steps. The *Secured Mail* claims "provide[d] a method whereby a barcode is generated, affixed to a mail object, and sent through the mail system [and t]hen, upon receipt, the barcode is scanned, and data corresponding to the sender is sent to the recipient over the network and displayed on the recipient's device." *Id.* at 910–11. The Federal Circuit found that "each step of the process is directed to the abstract process of communicating information about a mail object using a personalized marking." *Id.* at 911. And because the claims were "non-specific and lack[ed] technical detail," utilizing "well known" technologies and generic hardware, the Federal Circuit concluded that the claims lacked an inventive concept. *Id.* at 912.

The idea underlying Claim 1 of the '752 Patent is just as abstract as that of the *Content Extraction*, *Recognicorp*, and *Secured Mail* claims. Claim 1 of the '752 Patent does not include any specific limitations or steps regarding extracting data or decoding the data. Rather, all of the steps required to carry out the method are directed to the generic, conventional ideas of recognizing an image, decoding the image, then doing something based upon the decoded information. *Cyberfone Sys., LLC v. CNN Interactive Grp., Inc.*, 558 F. App'x 988, 992 (Fed. Cir. 2014) (finding claim directed to "the well-known concept of categorical data storage, i.e., the idea of collecting information in classified form, then separating and transmitting that information according to its classification, is an abstract idea that is not patent-eligible"). That Claim 1 of the '752 Patent sends and receives the decoded information over a network does not make it any less abstract. *See, e.g.,* *Ultramercial*, 772 F.3d at 716 (noting that "the use of the Internet is not sufficient to save otherwise abstract claims from ineligibility under § 101") (citation omitted).

By only claiming the desired result—recognizing and retrieving information associated with a pattern like a barcode—without describing any specific roadmap for

doing so, Claim 1 of the '752 Patent falls short of claiming eligible subject matter under § 101. *See Internet Patents*, 790 F.3d at 1348; *Secured Mail*, 873 F.3d at 910–11.

> **(b)** **The other asserted claims are directed to the abstract idea of data recognition and retrieval.**

The remaining asserted claims of the Patents-in-Suit relate to the same abstract concept of data recognition and retrieval. Specifically, each of the other asserted independent claims refers only to standard computing means for decoding data. For example, the claims describe a "computer application" comprising "logic" ('752 Patent at cl. 17; '369 Patent at cl. 17), or a "symbology management application" ('752 Patent at cl. 24; '369 Patent at cl. 24; '190 Patent at cl. 20), to perform each of the steps in Claim 1 of the '752 Patent. Other claims replace the terms "object within digital image" with "digital image" ('369 Patent, cl. 1; '190 Patent at cl. 1) and "electronic device" with "portable electronic device" ('190 Patent at cl. 17). These claims are thus indistinguishable from Claim 1 of the '752 Patent. Claims 1 and 15 of the '773 Patent[3] recite the additional limitation that the visual detection applications run in the "background"[4], which is another standard computing function.

Some of the asserted dependent claims recite similar limitations for: (1) running visual detection applications in the background ('752 Patent (cls. 4, 25), '369 Patent (cls. 4, 25), and '190 Patent (cl. 4)); configuring visual detection applications to automatically detect barcodes ('752 Patent (cl. 5), '369 Patent (cl. 5), '190 Patent (cl. 5), and '773 Patent (cl. 4)); and (3) analyzing the decode string and selecting appropriate application to decode ('752 Patent (cl. 9), '369 Patent (cl. 9), '190 Patent (cl. 9),  and '773 Patent (cls. 8, 14, 17, 18)). The purported problem the applicant wanted to resolve was to provide to users a convenient way to select "an appropriate" scanning/decoding application "for scanning a particular symbology when multiple scanning applications reside on the device." ('773 Patent at 3:24-36.) But running an application in the background,

---

[3] The '773 Patent is the parent patent.

[4] The independent claims in the other Patents-in-Suit do not include this limitation.

performing a task more efficiently, or automating something that was otherwise done manually, does not confer patent eligibility. *See Bancorp*, 687 F.3d at 1279 ("Using a computer to accelerate an ineligible mental process does not make that process patent-eligible.") This is especially true since the applicant forgot to disclose any details on how the automatic detection of barcodes could be achieved. Symbology interprets the "background" limitation in Claims 1 of the '773 Patent as requiring that visual detection applications be able to be "run in the background in standby." Dkt. No. 1 ("Compl.") Ex. E. As such, the "background" limitation does not actually solve the stated problem of automatic selection of visual detection applications that are simply sitting in conventional "standby" until they are brought to the foreground. By only claiming the desired result—automatically detecting a pattern like a barcode—without describing any specific roadmap for doing so, these claims also fall short of claiming eligible subject matter under § 101. *See Internet Patents*, 790 F.3d at 1348; *Secured Mail*, 873 F.3d at 910–11.

The remaining asserted dependent claims are similarly abstract. These claims recite insignificant pre- or post-solution activity, such as allowing a user to select certain preferences or store data:

| Pre- or Post-Solution Activity | Claims |
| --- | --- |
| enabling users to select certain preferences | '752 Patent (cls. 2, 3, 18) |
| | '369 Patent (cls. 2, 3, 18) |
| | '190 Patent (cls. 2, 3, 18) |
| | '773 Patent (cls. 2, 3) |
| detecting barcodes based on user request | '752 Patent (cl. 7) |
| | '369 Patent (cl. 7) |
| | '190 Patent (cl. 7) |
| | '773 Patent (cl. 6) |
| sending instructions to visual detection applications and remote servers | '752 Patent (cl. 8) |
| | '369 Patent (cl. 8) |
| | '190 Patent (cl. 8) |
| | '773 Patent (cl. 7) |
| enabling the user to store information | '752 Patent (cl. 11) |
| | '369 Patent (cl. 11) |
| | '190 Patent (cl. 11) |
| | '773 Patent (cl. 10) |
| providing e-commerce options to the user | '752 Patent (cl. 12) |
| | '369 Patent (cl. 12) |

|  | '190 Patent (cl. 12) |
|  | '773 Patent (cl. 11) |
| decoding barcodes using visual search technology | '752 Patent (cls. 15, 23) |
|  | '369 Patent (cls. 15, 23) |
|  | '190 Patent (cl. 15) |

These claims, like Claim 1 of the '752 Patent, are not meaningfully limited because these activities are not "essential to the invention." *Clear with Computers, LLC v. Dick's Sporting Goods, Inc.*, 21 F. Supp. 3d 758, 763 (E.D. Tex. 2014) (noting limitations must "do more than recite pre- or post-solution activity, they [must be] central to the solution itself" to be meaningful) (quotations omitted). All of these claims are directed to the abstract idea of data recognition and retrieval and are just as abstract as Claim 1 of the '752 Patent.

### (c)    The remaining claims are similarly abstract.

The other claims of the Patents-in-Suit not specifically asserted in the Complaint are also patent-ineligible under the first step of the *Alice* test. These claims recite insignificant pre- or post-solution activity like alerting the user and asking to decode a barcode, analyzing a decode string and selecting the appropriate application to decode, allowing the user to select an application to decode the barcode, and displaying information and images. (*See, e.g.*, '752 Patent at cls. 6, 10, 13, 14, 16, 19, 20, 21, 22, 26, 27, 28; '369 Patent at cls. 6, 10, 13, 14, 16, 19, 20, 21, 22, 26, 27, 28; '190 Patent at cls. 6, 10, 13, 14, 16, 19; and '773 Patent at cls. 5, 9, 12, 13, 16.) Therefore, none of these claims or any of the other claims in the Patents-in-Suit not specifically addressed here are directed to anything more than the bare idea of data recognition and retrieval. Symbology's claims all fail the first step of the *Alice* test.

### 2.    *Alice* Step 2

Because Claim 1 of the '752 Patent is directed to an abstract idea, the Court must next determine whether it contains an "inventive concept sufficient to transform the claimed abstract idea into a patent eligible application." *Alice*, 134 S. Ct. at 2357 (internal quotations omitted). To pass this test, Claim 1 of the '752 Patent "must include additional features" that "must be more than well-understood, routine, conventional activity." *Ultramercial*, 772 F.3d at 715 (quotation omitted). Here, Claim 1 of the '752 Patent is

broadly generic and does not contain meaningful limitations that would restrict it to a non-routine, specific application of the abstract idea.

> **(a)**   **The claims contain no inventive concept to transform the abstract idea into patent-eligible subject matter.**

Each of the steps recited in Claim 1 of the '752 Patent is described only at a high level of generality as "capturing a digital image," "detecting" a barcode, "decoding [the barcode] . . . to obtain a decode string," "sending the decode string to a remote server for processing," "receiving information . . . from the remote server," and "displaying the information." To accomplish these steps, Claim 1 of the '752 Patent recites the use of a "portable electronic device," "visual detection applications," and a "remote server." But the claimed "portable electronic device" can be virtually any device capable of taking a photograph ('752 Patent at 1:58–61), the "visual detection applications" can be a variety of off-the-shelf applications that users have installed on their smartphones (*id*. at 3:29-33), and the claimed "server" is implemented using generic hardware (*id*. at 9:65-10:1) to perform generic website functions (*id*. at 5:33-42).

The applicant's own characterizations demonstrate that the claimed components do not "improve the functioning of the computer itself," *Alice*, 134 S. Ct. at 2359, for example by disclosing an "improved, particularized method of digital data compression," *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1259 (Fed. Cir. 2014), or improving "the way a computer stores and retrieves data in memory," *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1339 (Fed. Cir. 2016). For example, in *Enfish*, the Federal Circuit distinguished the claims from others that "simply add[ed] conventional computer components to well-known business practices," *Id*. at 1338, holding instead that "they [we]re directed to a specific improvement to the way computers operate," *Id.* at 1336. In particular, the unconventional structure of the database resulted in "increased flexibility, faster search times, and smaller memory requirements." *Id*. at 1337. Unlike *Enfish*, nothing in Claim 1 of the '752 Patent shows any unconventional methodology that would amount to a "specific improvement to the way computers operate." Therefore, the focus of the Patents-in-Suit is not "on [a] specific asserted improvement in computer capabilities" but

instead "on a process that qualifies as an 'abstract idea' for which computers are invoked merely as a tool." *Id.* at 1336.

There is simply nothing "inventive" about using a known process (i.e., decoding a barcode) to access a website. *See Secured Mail*, 873 F.3d at 912. Moreover, the abstract functional descriptions in Claim 1 of the '752 Patent are devoid of any technical explanation as to how to implement the purported invention in an inventive way. *See In re TLI Commc'ns LLC Patent Litigation*, 823 F.3d 607, 615 (Fed. Cir. 2016) (claims failed *Alice*'s step 2 where specification limited its discussion of "additional functionality" of conventional components "to abstract functional descriptions devoid of technical explanation as to how to implement the invention"). Similar to the invalidated claim in *Recognicorp*, nothing in Claim 1 of the '752 Patent "'transforms' the abstract idea of . . . decoding," i.e., recognizing information, "into patent-eligible subject matter." 855 F.3d at 1328 (citing *Alice*, 134 S. Ct. at 2357).

Courts have repeatedly held that the presence of generic hardware and software like the kind recited in Claim 1 of the '752 Patent does not make an otherwise abstract idea patent-eligible. *See, e.g.*, *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1355 (Fed. Cir. 2014) ("That a computer receives and sends the information over a network—with no further specification—is not even arguably inventive."); *Content Extraction*, 776 F.3d at 1348 ("At most, [the] claims attempt to limit the abstract idea of recognizing and storing information from hard copy documents using a scanner and a computer to a particular technological environment. Such a limitation has been held insufficient to save a claim in this context."); *Bancorp*, 687 F.3d at 1276–77. In addition, an "abstract idea does not become nonabstract by limiting the invention to a particular field of use or technological environment, such as [mobile services]." *Intellectual Ventures I LL v. Capital One Bank U.S.A.*, 792 F.3d 1363, 1366 (Fed. Cir. 2015). Claim 1 of the '752 Patent is thus ineligible under step two of *Alice*.

The purported point of novelty of the Patents-in-Suit is the **result** of providing a convenient way for scanning barcodes by automating the "difficult" task of manually "select[ing] the appropriate application" to scan barcodes ('773 Patent at 3:24–36), but

independent Claims 1 and 15 of the '773 Patent (and dependent claims 4, 5, 9 and 25 of the '752 Patent, dependent claims 4, 5, 9, 25 of the '369 Patent, dependent claims 4, 5, and 9 of the '190 Patent, and dependent claims 4, 8, 14, 17, and 18 of the '773 Patent) do not describe any particular non-conventional *mechanism* for achieving the *result*. The recited limitations—whether considered individually or as an ordered combination—are insufficient to add "significantly more" to the abstract idea.

Because each of the claims of the Patents-in-Suit is altogether devoid of any "inventive concept," they are all patent-ineligible under § 101. *See Alice*, 134 S. Ct. at 2359–60.

### C.  The Disproportionate Risk of Preemption Confirms that the Claims Are Abstract

Because the claimed methods and systems can be implemented using virtually any device capable of taking a photograph, any off-the-shelf scanning/decoding application, and any conventional server capable of sending and receiving information, the Patents-in-Suit risk preempting *all* automated methods or systems for recognizing a pattern, like a barcode, and retrieving data based on that. *See, e.g., Loyalty Conversion Sys. Corp. v. Am. Airlines, Inc.*, 66 F. Supp. 3d 829, 843 (E.D. Tex. 2014) (finding "preemptive effect . . . broad" where "the claims [were] largely functional in nature, they [did] not provide any significant description of the particular means by which the various recited functions are performed," and "[a]ll that [was] disclosed [was] the ultimate objective"). Therefore, the claims implicate the same preemption concern undergirding the § 101 analysis and should be found ineligible.

## V.  CONCLUSION

For the foregoing reasons, Tech Data respectfully requests that the Court dismiss Symbology's Complaint for failure to state a claim upon which relief can be granted. Because leave to amend would be futile, Tech Data requests dismissal with prejudice.

Dated: March 8, 2018                    Respectfully submitted,

                                        By: /s/ Eleanor T. Barnett
                                            Eleanor T. Barnett, Esq.
                                            Florida Bar No. 0355630
                                            **WALDMAN BARNETT,P.L.**
                                            3250 Mary Street, Suite 102
                                            Coconut Grove, FL 33133
                                            (305) 371-8809 - Telephone
                                            (305) 448-4155 - Facsimile


                                        **ATTORNEYS FOR DEFENDANT**
                                        **TECH DATA CORP.**



## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and correct copy of the above and

foregoing document has been served on March 8, 2018, to all counsel of record who are

deemed to have consented to electronic service via the Court's CM/ECF system.

                                        _/s/ Eleanor T. Barnett_
                                        Eleanor T. Barnett